# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# OCALA DIVISION

**DANIEL CARMEN CERRATO,**

    **Plaintiff,**

v.                                                             **Case No: 5:22-cv-397-PRL**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

_____

## ORDER

Plaintiff appeals the administrative decision denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Upon a review of the record, the memoranda, and the applicable law, the Commissioner's decision is **affirmed.**

## I. BACKGROUND

For the sake of convenience, the administrative history, which is not in dispute, is copied from the Government's brief:

> On April 8, 2020, Plaintiff filed applications for a period of disability and Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), alleging disability beginning on November 30, 2016 (Tr. 385-86, 387-93). The Social Security Administration denied Plaintiff's applications initially and on reconsideration (Tr. 163-99, 200-55). On February 2, 2022, after an administrative hearing (Tr. 133-62), the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Social Security Act (the Act) (Tr. 111-26). That decision became the final decision of the Commissioner after the Appeals Council denied Plaintiff's request to review the decision (Tr. 56-62). This case is now ripe for judicial review. See 42 U.S.C. § 405(g).

(Doc. 24 at 2–3).

At the time of the ALJ's decision, Plaintiff was thirty-eight (38) years old. (Tr. 124, 163). Plaintiff has a high school education and past relevant work as a carpenter supervisor and a labor crew supervisor. (Tr. 124, 153–56, 435). Based on a review of the record, the ALJ found that Plaintiff had the following severe impairments: status-post left inguinal hernia repair; left-sided epididymitis; left inguinodynia; left ilioguinal neuralgia; direct right inguinal hernia; closed hip dislocation; degenerative changes at C5-6; schizoaffective disorder, depressive type; adjustment disorder with mixed anxiety and depressed mood; major depressive disorder without psychotic features; anxiety; cannabis use disorder; and sedative, hypnotic or anxiolytic use disorder. (Tr. 114).

The ALJ found that the Plaintiff had the residual functional capacity ("RFC") to perform light work. The ALJ found that Plaintiff can frequently overhead reach with the left arm. He can remember simple information, and perform simple routine work tasks during an eight hour workday with occasional contact with coworkers and the general public. (Tr. 117).

Based upon his RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as marker, cleaner or housekeeper, and router. (Tr. 125). The ALJ's finding includes his consideration of Plaintiff's limitations that erode the light unskilled occupational base, and the vocational expert's ("VE") testimony regarding what functions Plaintiff could perform in light of his limitations. (Tr. 125). Accordingly, the ALJ determined that Plaintiff is not disabled.

## II.     STANDARD OF REVIEW

A claimant is entitled to disability benefits when he or she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

The Commissioner has established a five-step sequential analysis for evaluating a claim of disability, which is by now well-known and otherwise set forth in the ALJ's decision. *See* 20 CFR §§ 404.1520(a), 416.920(a); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The claimant, of course, bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The scope of this Court's review is limited to a determination of whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). Indeed, the Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (first citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); then citing *Richardson*, 402 U.S. at 401); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). This is clearly a deferential standard.

### III.   DISCUSSION

On appeal, Plaintiff raises two arguments: (1) the mental RFC improperly accounts for his limitations in interacting with supervisors and (2) substantial evidence does not support the ALJ's reasons for discrediting Plaintiff's testimony.

#### A.   Substantial Evidence Supports the RFC and Hypothetical to the VE

First, Plaintiff argues that the ALJ erred by failing to include a limitation in interacting with supervisors in his RFC and hypothetical to the VE, when his psychiatric review technique ("PRT") rating included a moderate limitation in interacting with others. (Doc. 23 at 13); (Tr. 116–17). Moreover, Plaintiff argues that this omission is unsupported by substantial evidence, as two state agency psychological consultants opined that he had a moderate limitation in accepting instructions and responding appropriately to criticism from supervisors. (Doc. 23 at 18–19); (Tr. 116–17).

Here, the PRT rating found that Plaintiff has a moderate limitation in interacting with others. (Tr. 116). Under the Commissioner's regulations, the term "others" includes supervisors, coworkers, and the public. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00(E)(2). As the Commissioner argues, an ALJ's PRT rating is "not an assessment of a claimant's RFC; instead, they are used to rate the severity of a claimant's mental impairments at steps two and three of the sequential evaluation process[.]" (Doc. 24 at 11) (first citing Tr. 116-17; then citing 20 C.F.R. §§ 404.1520(a)(4)(ii)-(iii), 404.1520a(d)(1) & (d)(2); then citing Social Security Ruling (SSR) 96-8p, 61 Fed. Reg. 34,474, 34,477 (July 2, 1996)); *see Tronsen v. Saul*, No. 20-CV-61338, 2023 WL 2528944, at *7 (S.D. Fla. Feb. 16, 2023), *report and recommendation adopted sub nom. Tronsen v. Kijakazi*, No. 20-61338-CIV, 2023 WL 2524714 (S.D. Fla. Mar. 15, 2023). The RFC must only "incorporate limitations that, when viewed in light of the whole

- 4 -

record, appropriately reflect the PRT findings." *Bowman v. Comm'r, Soc. Sec.*, No. 6:13-cv-614-ORL-31TBS, 2014 WL 4059140, at *4 (M.D. Fla. July 28, 2014) (citing *Winschel v. Comm'r, Soc. Sec.*, 631 F.3d 1176 (11th Cir. 2011)); *see Tronsen*, 2023 WL 2528944, at *7–8.

As the Commissioner argues, the ALJ sufficiently accounted for the PRT rating that Plaintiff is moderately limited in interacting with others because the RFC is supported by substantial evidence. The RFC, in relevant part, found that the plaintiff has "an ability for remembering simple information, and performing simple routine work tasks during an 8 hour [sic] workday with occasional contact with coworkers and the general public." (Tr. 117). In determining Plaintiff's RFC, the ALJ explained why there were limitations to interacting with the public and coworkers, but none with regard to supervisors.

The ALJ considered that Plaintiff reported conflict "with his wife, from whom he is separated, due to custody and financial issues" and "with a friend . . . overseeing his money." (Tr. 122). The ALJ noted that Plaintiff, "however, did not regularly report difficulty interacting with other people during the relevant period." *Id.* Moreover, Plaintiff "reported shopping during his June 2021 consultative examination, which requires some interaction with the public." *Id.* Thus, the ALJ found that Plaintiff had "an ability for occasional contact with coworkers and the general public." *Id.*[1]

Further, the ALJ found the opinions of two state agency psychological consultants "partially persuasive." (Tr. 123). They opined that Plaintiff had moderate limitations in interacting with supervisors. *Id.* Plaintiff asserts that the ALJ failed to credit these opinions in

---

[1] Moreover, as discussed in regard to the ALJ's discrediting of Plaintiff's subjective complaints, the ALJ noted that Plaintiff reported to his therapist that he was terminated from jobs due to his physical symptoms, rather than conflict with supervisors or other individuals at work. *See* (Doc. 24 at 12); *see* discussion *infra* Sections III.B.2, III.B.3.

determining his RFC, as both consultants opined that he was moderately limited in his ability to "accept instructions and respond appropriately to criticism from supervisors." (Tr. 186, 219).[2] However, as the ALJ noted, "the consultants opined [that] claimant can perform simple work with limited social demands." (Tr. 123).

Moreover, the consultants opined that Plaintiff "can maintain concentration, persistence and pace for simple tasks with ordinary supervision; [and] can interact with others on a superficial level as needed for the performance of simple routine tasks[.]" *Id.* Additionally, "[t]hey opined that while mood and anxiety symptoms may interfere with claimant's ability to perform detailed tasks, the claimant retains the capacity to perform simple routine tasks in a limited social demand setting." (Tr. 123, 174, 187, 220, 244). Finally, because they "found [that the] claimant could have only superficial interaction with others[,]" the ALJ determined "that the claimant can have occasional interaction with coworkers and the public." (Tr. 123). Thus, the ALJ supported her findings with substantial evidence. *See supra* note 1 and accompanying text.

Additionally, the ALJ's RFC adequately accounted for her PRT rating because limiting Plaintiff to occasional contact with coworkers and the public, to remembering simple information, and to performing simple routine work tasks is consistent with a limitation on interacting with supervisors. *See* (Doc. 24 at 11); *Shaw v. Astrue*, 392 F. App'x 684, 686–87 (11th Cir. 2010) (failing to address doctor's findings regarding poor functionality in dealing with supervisors or stress was not inconsistent with RFC limiting plaintiff to "light exertional work, including work with simple instructions and no more than limited public contact.");

---

[2] Contrary to the Commissioner's assertion, both consultants did opine that Plaintiff had moderate limitations in accepting instructions and responding appropriately to criticism from supervisors. (Doc. 24 at 12).

*Williams v. Saul*, 532 F. Supp. 3d 1226, 1233 (M.D. Ala. 2021) (failing to address plaintiff's ability to respond to coworkers was consistent with ALJ's RFC determination that limited plaintiff to light work, simple routine tasks, and occasional interaction with supervisors and the public).[3]

Likewise, Plaintiff's brief acknowledges that PRT "findings . . . must be presented in a hypothetical question to the vocational witness when not adequately accounted for in the RFC determination." (Doc. 23 at 14) (first citing *Winschel*, 631 F.3d at 1180–81; then citing *Richter v. Comm'r of Soc. Sec.*, 379 F. App'x 959, 960 (11th Cir. 2010) (unpub.)). According to the Commissioner, the plaintiff's citation to *Winschel*, is in error, because the RFC adequately accounted for the PRT ratings, and thus, *Winschel* is inapplicable here. However, even if the RFC had not adequately accounted for the PRT ratings, the ALJ included a limitation of occasional contact with supervisors in her hypothetical to the VE.

Indeed, the plaintiff's brief mentions that the ALJ asked the VE what jobs were available to a hypothetical individual that could perform "frequent overhead reaching with the left arm, . . . [could] remember simple information[,] and [could] perform[] simple, routine work tasks" while having "occasional contact" with coworkers, supervisors, or the general public. (Doc. 23 at 12) (Tr. 159).[4] The VE testified that this hypothetical individual could perform the jobs of marker, cleaner or housekeeper, and router. (Tr. 125, 159, 160).

---

[3] *Accord Sheldon*, 2016 WL 4120444, at *4; *see also Brothers v. Comm'r of Soc. Sec.*, 648 F. App'x 938, 939 (11th Cir. 2016) (per curiam); *see also Ybarra v. Comm'r of Soc. Sec.*, 658 F. App'x 538, 542 (11th Cir. 2016) (per curiam).

[4] Specifically, the ALJ asked whether there were any jobs that could be performed by a hypothetical individual with Plaintiff's RFC that could not be in contact with workers, supervisors, or the general public. (Tr. 158–59). The VE responded that there were not. (Tr. 159). The ALJ then asked the VE whether there were any jobs for this same hypothetical individual "but with occasional contact" and the VE responded with the jobs of marker, cleaner or housekeeper, and router. (Tr. 125, 159, 160).

In finding that Plaintiff was not disabled, the ALJ pointed to these jobs that the VE referenced as existing in significant numbers in the national economy that Plaintiff can perform. (Tr. 124–25). Plaintiff does not argue that if the RFC included a limitation on his ability to interact with supervisors, that he would be unable to perform the jobs referenced by the VE. *Hill v. Comm'r of Soc. Sec.*, No. 5:14-CV-57-OC-PRL, 2015 WL 12844951, at *3 (M.D. Fla. Feb. 13, 2015) (finding it was harmless error to omit a limitation with respect to headaches from the RFC because plaintiff did not show it would render her unable to perform jobs referenced by VE and thus it "does not affect [p]laintiff's ability to work in these jobs."); *see Shaw*, 392 F. App'x at 687 n.1. Thus, even if the RFC had not adequately accounted for a limitation on Plaintiff's interaction with supervisors, it was accounted for in the hypothetical to the VE.

Accordingly, the ALJ's mental RFC and hypothetical to the VE adequately account for Plaintiff's PRT rating and are supported by substantial evidence.

### B. The ALJ's Reasons for Discrediting Plaintiff's Testimony are Supported by Substantial Evidence

Second, Plaintiff argues that the ALJ's reasons for discrediting his testimony about left inguinal pain, gastrointestinal symptoms, and mental health symptoms are not supported by substantial evidence. (Doc. 23 at 20–28). In this case, the ALJ explicitly discussed Plaintiff's allegations regarding the severity of his symptoms and found his alleged symptoms were "not entirely consistent with the medical evidence and other evidence in the record[.]" (Tr. 118).

When a claimant alleges that he or she has disabling subjective symptoms, the ALJ must determine whether the claimant has a condition that could reasonably be expected to cause the symptoms. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). If the ALJ determines the

claimant has such a condition, the ALJ will evaluate the alleged symptoms' intensity and persistence and how they limit the claimant's ability to work. *Id*. The ALJ will consider the claimant's testimony regarding his or her symptoms, including any inconsistencies between the testimony and the other evidence. 20 C.F.R. §§ 404.1529(c)(3)-(4), 416.929(c)(3)-(4). An ALJ may reject a claimant's testimony of disabling symptoms as not credible if she provides "explicit and adequate reasons." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995).

1. **Plaintiff's Testimony About Left Inguinal Pain and Gastrointestinal Symptoms**

Plaintiff asserts that the ALJ's failure to fully credit his subjective complaints of left inguinal pain and gastrointestinal symptoms is not supported by substantial evidence. Here, the ALJ found that:

> despite claimant's allegations of gastrointestinal symptoms and problems with elimination, he did not regularly make such reports to treating providers. Moreover, the evidence does not document regular or significantly abnormal medical findings corroborating the extent of the alleged gastrointestinal symptoms. Treatment records also fail to document regular subjective complaints or findings corroborating claimant's testimony regarding such limited ability to sit and stand. The absence of more significant medical findings and subjective complaints as noted in the treatment records and discussed in this decision is consistent with the ability to perform the exertional demands of light work.

(Tr. 120). Plaintiff argues that "the record is replete with documentation of [his] complaints of painful bowel movements and abnormal exam findings[.]" (Doc. 23 at 20). However, several of these records were referenced by the ALJ and do not undermine the substantial evidence supporting her findings.

For example, the plaintiff cites—and the ALJ specifically noted—a May 28, 2018, visit to the emergency room "for left inguinal pain" where he was assessed with epididymitis, "but he left after refusing to receive an ultrasound examination by a female technician." (Doc. 23 at 21); (Tr. 119, 554, 568). Likewise, the ALJ noted that "[t]esting performed during an October 2018 emergency room visit for the same reason was generally unremarkable." (Doc. 23 at 21); (Tr. 119, 837, 841). Similarly, Plaintiff refers to a November 1, 2018, outpatient visit, which the ALJ noted as documenting a "decreased range of motion in the left hip and . . . assess[ing] [Plaintiff] with closed dislocation of the hip." (Tr. 118, 651–52). However, the ALJ noted that "[s]ubsequent treatment records do not document abnormal findings relating to claimant's left hip, and no specific treatment has been recommended during the relevant period for neck or hip pain." (Tr. 118). The ALJ noted that a June 2021 consultative examination "revealed a positive left hip Faber test and mildly reduced 4/5 strength in the left hip." *Id.*

Likewise, the ALJ considered Plaintiff's January 16, 2019, visit, where Plaintiff reported left inguinal pain and abdominal pain. (Tr. 118–19, 591–93). The ALJ noted that during this visit, the provider documented "that serial scrotal/groin ultrasounds, a CT scan, and a recent November 2018 MRI had been negative." (Tr. 119). Moreover, "[a] physical examination revealed the left epididymis was tender on palpitation, though there was no palpable hernia bilaterally." (Tr. 119).

Further, as the Commissioner argues, the ALJ noted that a symptom Plaintiff experienced was tenderness. Indeed, "[i]n limiting claimant to the exertional demands of light work, [the ALJ] . . . considered his history of left inguinal hernia repair, his subsequent reports of left inguinal pain, and . . . findings made during evaluation of complaints of left inguinal

pain." (Tr. 120). The ALJ noted that Plaintiff "underwent evaluation of his pain complaints with laparoscopy, but diagnostic testing overall did not reveal inguinal pain, and further surgical intervention has not been recommended." *Id.*

While Plaintiff asserts that there are more severe findings of record and that surgery was in fact recommended (Doc. 25 at 6), the ALJ considered these records. For example, Plaintiff refers to records from March 2019 documenting "exquisite tenderness" and the performance of a left ilioinguinal nerve block, which the ALJ noted resulted in "immediate pain relief." (Tr. 119, 599). Plaintiff was told to follow up with that provider if he wished "to proceed with left ilioinguinal neurolysis." (Tr. 599).

On September 13, 2019, the ALJ noted that Plaintiff "underwent left ilioguinal neurolysis and left ilioinguinal neurorrhaphy for left ilioinguinal neuralagia." (Tr. 119). "During a 39-day post-operative visit . . . [Plaintiff] reported doing very well with 90% improvement." *Id.* The ALJ noted that "[e]xamination revealed some residual inflammation and tenderness to touch, but the provider noted claimant's pre-operative pain had resolved and that claimant was experiencing post-operative pain and tenderness." *Id.* Notably, the ALJ documented that in September of 2020, providers stated that Plaintiff "was fixated on having surgery, but he acknowledged that after a nerve ablation procedure, he no longer felt a throbbing sensation in his left testicle." (Tr. 119–20). "[E]xaminations by the primary care provider in July 2020 and September 2020 were unremarkable, aside from findings of left inguinal tenderness to palpitation." (Tr. 120).

Further, the ALJ noted that "[t]he evidence, however, documents no subsequent treatment for complaints of left inguinal pain, abdominal pain, or gastrointestinal symptoms other than prescriptions from MMTCH of Florida for daily liquid THC and CBD oil." (Tr.

120). "Notably, the claimant repeatedly reported to his provider at MMTC that his prescriptions helped his symptoms." (Tr. 120).

Finally, the plaintiff argues that the ALJ improperly found that there was no evidence corroborating his testimony regarding a limited ability to sit and stand. Plaintiff states that "a physician's silence regarding a claimant's functional limitations cannot be construed to mean that there are not any limitations." (Doc. 23 at 22) (citing *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988)). However, the ALJ did not discredit Plaintiff's testimony on the basis of a single doctor's silence regarding sitting and standing limitations—instead, the ALJ stated that the "[t]reatment records . . . do not document findings of abnormal gait." (Tr. 120). Thus, substantial evidence supports the ALJ's reasons for discrediting Plaintiff's testimony about his left inguinal pain and gastrointestinal symptoms.

### 2. The ALJ Properly Considered the Episodic Nature of Plaintiff's Mental Impairments

Next, Plaintiff argues that the ALJ failed to consider the episodic nature of his mental impairments and selectively cited evidence from the record when finding that "the evidence as a whole reveals mostly unremarkable findings." (Tr. 121). As Plaintiff asserts, the Eleventh Circuit finds "that people with chronic diseases can experience good and bad days." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1267 (11th Cir. 2021) (per curiam); *see Simon v. Comm'r of Soc. Sec.*, 7 F.4th 1094, 1106–08 (11th Cir. 2021). However, as the Commissioner argues, substantial evidence supports the ALJ's assessment of Plaintiff's mental impairments, and the Court may not reweigh the evidence.

Here, the ALJ noted that Plaintiff had an involuntary overnight admission to "The Centers" from May 29 to May 30, 2018, for allegedly threatening to kill family members and

blow up the world. (Tr. 121). This was Plaintiff's only inpatient psychiatric admission. (Tr. 121). The ALJ noted that Plaintiff appeared paranoid during this admission, but that subsequent treatment records, from The Centers "and other providers, . . . do not document observations of paranoia or signs that [Plaintiff] . . . appeared to be responding to internal stimuli or that he had disorganized thought content." (Tr. 121 n.2). Moreover, after Plaintiff was discharged, he denied having any true intent to kill, and instead reported that "his statements were in response to a panic attack brought on by his homelessness and medical problems." (Tr. 121 n.3, 704, 724). The ALJ noted that since, Plaintiff has not "made any reports of homicidal ideation." (Tr. 121 n.3, 702–04, 709, 714).

Plaintiff asserts that the ALJ failed to note "the extent of . . . therapy" that he had with Licensed Mental Health Counselor ("LHMC") Michael Weaver. However, the ALJ discussed records from LHMC Weaver throughout her decision. For example, the ALJ noted that the only psychotropic medication that Plaintiff was prescribed during the relevant period was Ativan, following his sole inpatient admission. (Tr. 121–22). The ALJ stated that LHMC Weaver "noted in May 2019 that [Plaintiff] was closed to the idea of anti-depressant medication." (Tr. 122).[5]

Also, Plaintiff argues that the ALJ improperly found that a June 9, 2020, telehealth note from The Centers revealed "unremarkable findings[,]" and that "[t]here are other unremarkable findings[,]" because a second treatment note from The Centers dated July 16, 2020, "documents significant abnormalities." (Doc. 23 at 26); (Tr. 121, 725). On July 16, 2020, Plaintiff was seen at The Centers, and the treatment note indicated that Plaintiff had

---

[5] Moreover, the ALJ noted that LHMC Weaver discussed employment pursuits with Plaintiff and that Plaintiff reported to LHMC Weaver that he had allegedly lost different jobs due to his physical symptoms rather than mental impairments. *See* discussion *supra* Section III.B.3.

poor grooming; an angry and irritable mood; congruent and labile affect; talkative, pressured, and loud speech; paranoid delusions; and fair judgment and fair insight. (Tr. 731). From the outset of this visit, the provider noted that Plaintiff "was upset and very litigious, accusatory, [and] demanding" and it appeared that Plaintiff "was only seeking to raise legal matters involving his mental health records, some kind of court proceeding he attended, and removal of diagnosis in his records made by other providers." (Tr. 730). The provider was unable to clarify the multiple issues raised by Plaintiff and felt "that he needed to make a different kind of appointment with another staff member better qualified to address his issues." *Id.*

About a week later, on July 21, 2020, Plaintiff again saw this provider at the Centers, stating that he "made this appointment . . . so we could complete what we started last time[.]" (Tr. 733). During this visit, Plaintiff clarified to the provider that he was "troubled by the diagnosis of Schizoaffective disorder appearing on his chart. . . . [and] [h]e believes this diagnosis played an important role in losing the custody battle[.]" (Tr. 733). Importantly, at this visit, Plaintiff was documented as being appropriately dressed and groomed; having a good or better mood; congruent, full, and appropriate affect; soft volume; linear, logical, and goal directed thought process; no disturbances; no delusions; good judgment; and good insight. (Tr. 733–34).

Likewise, on June 15, 2021, consultative examiner Dr. Bojarski evaluated Plaintiff, and documented that his "grooming was considered average[,]" his "speech was clear[,]" "[t]here were no visual or auditory problems noted or reported[,]" and "[t]here was no evidence of a thought disorder[.]" (Tr. 739). Plaintiff argues that the ALJ failed to fully report the abnormal findings of Dr. Bojarski that he "tended to be verbose and attempted to control the interview at times[,]"that his "[e]ye contact was minimal[,]" and that his "[r]esponses to

- 14 -

structured questions assessing judgment and common sense were 50 percent inaccurate[.]" (Tr. 739). However, as the ALJ noted, Dr. Bojarski documented that Plaintiff "was oriented in all 3 spheres[;]" "performed mental control exercises within normal time limits and without error, inconsistent with concentration deficits[;]" and "recalled seven digits forward and five in reverse order, inconsistent with immediate memory deficits." (Tr. 121, 739). Moreover, Dr. Bojarski documented that Plaintiff "provided appropriate comparisons . . . and provided an analogous response to two of three proverbs, suggesting intact abstract thinking." (Tr. 739–40). Ultimately, Dr. Bojarski opined that Plaintiff "appears to have an adequate social support system, . . . is engaging in some leisure activities, . . . is able to perform some household chores. . . . [and] appears cognitively capable of independent management of any funds to which he is currently entitled." (Tr. 740).

Plaintiff points to November 1, 2018, and January 16, 2019, treatment notes that he admitted to severe depression and was suffering from stress, suicidal thoughts, and difficulty concentrating. (Doc. 23 at 27) (Tr. 592, 651). However, as Dr. Bojarski documented, upon mental status examination, Plaintiff did not appear to have concentration or memory deficits. (Tr. 121, 739). Moreover, while Plaintiff points to various screenings and diagnoses of depression and anxiety, providers document that, for example, Plaintiff's "[i]ntellectual functioning appears normal" and there are "[n]o overt signs of psychosis or obvious signs of an unstable personality disorder[.]" (Tr. 752). Likewise, during an outpatient visit on March 25, 2019, providers documented that Plaintiff had a normal gait, and despite an anxious and depressed mood, Plaintiff was well groomed, was alert and oriented, had intact recent and remote memory, and had good insight and judgment. (Tr. 659).

### 3. The ALJ Properly Considered Plaintiff's Activities of Daily Living

Finally, Plaintiff argues that his activities of daily living do not undermine his disability claim as the ALJ found, and that the ALJ improperly considered his efforts to find part-time work. Here, the ALJ stated that:

> While not dispositive, claimant has reported engaging in a variety of activities that are not inconsistent with the extent of limitations alleged. In particular, claimant told his primary care provider in March 2019 that he cleans the house, cooks meals, is independent with personal needs tasks, drives, and can use public transportation. In June 2021, he told a psychological consultative examiner that he shops, cooks, and does laundry. Claimant reported various employment pursuits to his mental health therapist. For example, he reported trying to become a life insurance agent in September 2019. In October 2019, he reported getting a part-time job making $18 an hour. Claimant reported having been hired to do handyman work in July 2020, but reported constipation had been slowing his work down. He and his therapist discussed learning about the insurance profession to plan for a better future in August 2020. The claimant reported sporadic work in September 2020. He reported having lost his job as a carpet cleaner secondary to spending time on his bowel problems in October 2020. In June 2021, however, he reported being involved in a vocation program to produce music and having 40 lessons left.

(Tr. 122) (internal citations omitted).

Plaintiff's argument that the ALJ erred in considering his daily activities is not persuasive. The Eleventh Circuit has clarified that it is appropriate for an ALJ to consider a claimant's activities of daily living, even if claimant's activities are only performed for short durations, if the activities relate to the subjective pain alleged. *Whitmore v. Soc. Sec. Admin., Comm'r*, No. 20-13757, 2021 WL 1961926 (11th Cir. May 17, 2021); *cf. Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1264 (11th Cir. 2019) (finding activities of daily living did not

discount treating physicians' opinions that plaintiff was suffering from mental impairments where ALJ relied on "solitary activities such as watching television, walking the dog, and cooking."). Here, it was entirely proper for the ALJ to consider Plaintiff's ability to independently perform personal needs tasks, care for his dog, use public transportation, shop, drive, clean the house, cook meals, and do laundry. (Tr. 122–23, 657–58, 739–40). Plaintiff's activities of daily living, as well as the record evidence cited above, constitutes substantial evidence upon which the ALJ could rely in both the RFC determination and the finding that Plaintiff was not disabled.

Further, Plaintiff's argument that the ALJ erred by considering his employment pursuits is unavailing. "In making the adverse credibility determination, the ALJ also considered that [Plaintiff] continued to work after the onset date of [his] disability." *Buley v. Comm'r of Soc. Sec.*, 739 F. App'x 563, 572 (11th Cir. 2018) (finding ALJ's credibility determination supported by substantial evidence where plaintiff continued to work despite claiming that her disabling conditions left her unable to work); *Stultz v. Comm'r of Soc. Sec.*, 628 F. App'x 665, 669 (11th Cir. 2015) (affirming, as supported by substantial evidence, ALJ's determination that plaintiff's testimony and subjective complaints were not fully credible where ALJ "explained that [plaintiff]'s work history—which contained almost no earnings since 1991—was a factor in evaluating [plaintiff]'s credibility about his inability to maintain gainful employment."). Here, it was proper for the ALJ to consider that Plaintiff reported to his LHMC Weaver that he got a part-time job for $18 an hour in October 2019, was hired as a handyman in July of 2020, had a job cleaning carpets in August of 2020, and reported sporadic work in September 2020. (Tr. 122, 771, 774, 775).

Moreover, it was proper for the ALJ to consider Plaintiff's reports to LHMC Weaver of work slowing down and losing his job due to constipation and difficultly defecating, rather than due to his mental impairments. (Tr. 122, 774–76); *cf. Williams v. Apfel*, 73 F. Supp. 2d 1325, 1341 (M.D. Fla. 1999) (finding substantial evidence did not support that plaintiff could hold job for a significant period where during a period of escalating mental symptoms she was fired for being verbally abusive). Indeed, LHMC Weaver "told [Plaintiff that] . . . his medical issues related to his physical pain, gastrointestinal problems, bowel issues, hemorrhoids, and testicular pain seem to be what disables him from working and being able to function normally." (Tr. 775–76).

Likewise, it was proper for the ALJ to consider that Plaintiff and LHMC Weaver discussed looking into various jobs and learning about the insurance profession. (Tr. 122, 771, 775). Notably, LHMC Weaver "encouraged [Plaintiff] to work the best he can to bring in money to survive" and told Plaintiff to "focus[] on various jobs as they" arise "to plan for a better future." (Tr. 775); *cf. Williams v. Apfel*, 73 F. Supp. 2d at 1341 (doctor treating plaintiff for three years "indicated that [she] . . . was not stabilized to the point that she could hold a steady job or tolerate long hours").

As explained above, substantial evidence supports the ALJ's decision and the RFC. *See Miles v. Chater,* 84 F.3d 1397, 1400 (11th Cir. 1996) ("If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it."). Accordingly, the ALJ provided good cause reasons, supported by substantial evidence, to support her finding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not entirely consistent with the medical record." (Tr. 17). The ALJ properly considered Plaintiff's activities of daily living and treatment history

together with the other record evidence. Even if this Court were to disagree with the ALJ's resolution of the factual issues, and would resolve them differently, the ALJ's decision nevertheless must be affirmed where, as here, it is supported by substantial evidence in the record as a whole. *See Winschel*, 631 F.3d at 1178; *Barnes*, 932 F.2d at 1358 ("The court need not determine whether it would have reached a different result based upon the record.").

### IV.   CONCLUSION

For the reasons stated above, the ALJ'S decision is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g). The **Clerk is directed** to enter final judgment for the **Commissioner** and **close the file**.

**DONE and ORDERED** in Ocala, Florida on January 29, 2024.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties